Let me just say it's good to be back in Jacksonville again. I was here in March of 2020 when we had our last in-person sitting for a while. I think we closed everything off to COVID after that, so it's good to be back here. First, Judge Newsom and I are very happy to be here and we are very, very thankful and grateful to have with us Judge Lyles Burke from the Northern District of Alabama. He sits in Huntsville and has now been on the Federal District Court there for approximately three years, right? He is a graduate of the University of Alabama School of Law. He served as, in many capacities, but he served as a state trial judge and a state appellate judge in the Alabama court system before President Trump nominated him to the District Court bench, so we're very, very happy and glad that he's here to help us with our work. Thank you. COVID has changed our world in a lot of ways and we're still dealing with some of those different protocols, so we ask you to be patient with us if we run into any problems. We're going to try to do this as seamlessly as possible, but we have a lot of things going on at one time, things that we don't normally see in an in-person oral argument setting. One is that we have some lawyers here live and we have some lawyers on Zoom by video conference. The second is that for days like tomorrow and Thursday, we're also going to have one of our colleagues, Judge Ed Carnes, by Zoom as well, so just bear with us. We'll try to make everything work and hopefully we'll have a good conversation about these cases. You know our lighting system. When the yellow light goes on, that means that time is about to run, so bring your remarks to a close or start wrapping up. Valerie, you're going to tell the people on Zoom when they have a minute or two? Okay, so those of you who are on Zoom will also be able to get a heads up from Valerie about when your time is about to expire. For those of you who are at the podium, I think we're safe enough with our protocols here that you do not need and should not wear a mask so that we can hear you better. And then obviously when you're done, then you can go back to your council table and put the mask back on. And with that, I think we are ready to begin. And our first case is number 20-12487, Estela Agueda Romero versus Chad Wolf. Mr. Dominguez. Yes, good morning, your honors. Anthony Richard Dominguez appearing on behalf of Petitioner Estela Agueda Romero, and it may have pleased the court. The district court erred in refusing to grant Petitioner a writ of habeas corpus, releasing her from her order of supervision and the condition that she depart the United States by January 20, 2020. That was the proper remedy in this case because Petitioner's 1995 order of deportation in absentia is considered executed under the plain language of 8 U.S.C. Section 1101G. Because Petitioner's deportation order is considered executed under 1101G, she was not pending removal and her order of supervision and the condition that she depart the United States were unlawful. Here, the government only possessed an previously executed order of removal, such that if they sought to enforce the order, it could only be enforced after reinstatement under 8 U.S.C. 1231A5. Now, Petitioner. Hold on, let me ask you a question. So your argument, I think, is based on the text of Section 1101G, right? Correct, your honor. And one of the things that the government argues is that to the extent the language of that statutory provision is not clear or is ambiguous, then the secretary has issued a regulation which indicates that the deportation has or removal has to occur after the order is entered and that we owe some level of deference to that regulation. Can you tell me your response to that argument? Yes, your honor. The regulation at issue is 241.7. But in our brief, we traced the history of that regulation and the language of the regulation actually parrots the amendment to the criminal statute 1326A. And that language that the departure must be while an order of removal was outstanding or is outstanding was specifically amended to ensure that a departure prior to an removal order becoming or prior to it becoming administratively also counted for self-removal in that context. The Fifth Circuit in U.S. versus Ramirez-Carcamo laid out this history that it was really in response to non-citizens making arguments that they had not been ordered removed or they had not been removed because they departed prior to the removal order becoming administratively final. So looking at the history of the regulation, it was merely meant to reemphasize the fact that a departure prior to a removal order becoming administratively final also executes a removal order. Therefore, really the regulation, all it does is reemphasize that fact that a self-removal also occurs even if a removal order is not administratively final or, for instance, while a removal order continues under review to the Board of Immigration Appeals. So just this is Judge Newsom. Can I just ask you another question? So you're referring to the criminal provision 1326, which sort of de facto incorporates 1101G. Oddly, it seems to me that your interpretation of 1101G, which would encompass a larger class of immigrants, once that is picked up and plopped down in 1326, makes 1326 broader. It's criminal prohibition broader. And so I wonder whether or not we're running, we might not be running into rule of lenity problems. I recognize that's odd for the lenity presumption to run against you in this case, but because 1101G ends up getting incorporated into a criminal statute, doesn't your interpretation of 1101G render 1326 broader than it otherwise would be, contrary for 1326 defendants to the rule of lenity? Yes, Your Honor. And it is a little unusual in this case that it is a broader reading that we're advocating for such that her removal order was executed. But looking at actually the legislative history of 1101G in Maverka versus Spurdy from the Supreme Court in 1964, tells us that the statute was written to encompass as broad a class of non-citizens as possible who have executed a removal order. And going back to the criminal statute, it was amended with IRA in 1996, simply to reemphasize, again, the fact that departure prior to a removal order becoming non-final also falls under the category of 1101G. Although we are... I guess my point is, I think Judge Jordan's point at the outset is well taken. You can read 1101G either way. It could be a succession of conditions or two independent conditions. And if that's true, then that's likewise true of 1326. 1326 is a criminal prohibition. And so if we're faced with a sort of fatally ambiguous criminal statute, typically the rule of lenity would tell us to read it in the defendant's favor, which... And in reading 1326 in the defendant's favor, that sort of boomerangs back around on your position here, I'm afraid. Because you're the one who wants to include a larger class of immigrants within this group. Your Honor, I think that would be problematic for various reasons. Number one is that it would create a circuit split as to the reading of 1101G. Both the Fifth Circuit and the Seventh Circuit have held that 1101G in their reading. It does not command that the departure come after the entry of a removal order. And I would contend that the plain text of 1101G simply has two predicates. Number one, that the alien has been ordered, deported, or removed. And number two, that the non-citizen has left United States. So can I ask you a question just about this hypothetical? I think the syntax is parallel. So if there is a workplace policy that says anyone sick who has come into the office shall be suspended, and someone came into the office last month, and then they are sick yesterday, is that person subject to the policy? I mean, can we read that policy to encompass two independent conditions without respect to succession? I think it would actually have to look back into the reasoning behind the rule, Your Honor. And here we know that the legislative history behind 1101G was meant to encompass as broad as broad a class of non-citizens as possible. And here specifically, Congress left out any temporal relationship between the two predicates. Congress could have just as easily written that any alien who's ordered, deported, or removed and then departs the United States is considered removed in pursuance of law. Here they simply referred that any alien ordered, deported, or removed who has left the United States is considered removed in pursuance of law. Now, Mr. Cummings, does your reading depend on the immigrant's knowledge that removal proceedings have begun? In other words, let's say that a notice to appear is filed or sent or issued so that removal proceedings can begin once the immigrant is served with the NTA. But before the NTA is served on her, she voluntarily leaves the United States. So technically, the government has begun removal proceedings, at least the first step of removal proceedings, although it hasn't served the NTA on her. But she leaves not knowing that the process. Is your position the same with regard to that immigrant? Yes, your honor. I do believe that notice of the government's intent to remove the non-citizen is key. That's the case here where petitioner was issued an order to show cause order and received the notice of hearing of the government's intent to commence removal proceedings against her. She knew of that first hearing before departing, before voluntarily deporting herself from the United States. And the same was true in the Fifth Circuit's case, United States v. Ramirez-Carcamo, where the non-citizen did receive notice as to the hearing where the government intended to seek a removal order against the non-citizen. So I do believe... This is Judge Newsom. Just to pick up, I think I understand why that makes some common sense, but I'm not really sure where it, how it proceeds from the language of the statute. I mean, your contention here has been, especially in the face of the regulation and my argument about the rule of lenity, your position must be that the statute is clear on its face, but I'm not sure where this notice caveat comes from on the face of the statute. I believe it's simply meant to be fundamental issues of inherent fairness and due process, Your Honor. If the non-citizen knows of the government's intent to seek their removal and then voluntarily removes themselves from the United States, in both the cases of Ramirez-Carcamo and in this case, specific warnings were given to each non-citizen that should they fail to present themselves for the removal hearing, that they will be ordered to remove in absentia. But you agree, I presume, that the language of the statute doesn't suggest this notice component. I mean, it just says on your reading that, you know, you left. Doesn't, your reading doesn't say when. I mean, you could have left 20 years ago. That's correct, Your Honor. The language of the statute does not have an inherent notice requirement to it. But given the facts presented of this case, I think it reinforces the fact that when, and in the Fifth Circuit case, when the non-citizen does know that the government intends to seek a removal order against them, under the plain language of the statute, they have executed their order. Again, I would contend that it is unambiguous that any order, the temporal relationship does not exist there. And as long as those two predicates are met, the order has been executed and they're removed in pursuance of law. And I see my time is running down, Your Honor. I would simply like to re-emphasize the fact that although the regulation does exist, just because the regulation re-emphasizes the fact that departing the United States prior to a removal order becoming administratively final does not mean that that re-emphasis on that subset of non-citizens who depart the United States governs all classes of non-citizens who should be considered removed in pursuance of law under 1101G. I see my time has come to an expiration. I reserve for rebuttal if Your Honors have no further questions at this time. All right. Thank you very much, Mr. Dominguez. You've saved your couple of minutes for rebuttal. Thank you, Your Honors. Ms. Ramos. Good morning, Your Honors, and may it please the Court. Michelle Ramos on behalf of the government. Appellant asks this Court to review the District Court's interpretation of 8 U.S.C. section 1101G in the context of the statutes and regulations governing the reinstatement of previously executed removal orders, specifically 8 U.S.C. section 1231.85 and 8 C.F.R. 241.4. Because the District Court lacked jurisdiction to consider Appellant's challenges to her removal order, this Court should dismiss her appeal in the first instance. To the extent that this Court finds the District Court had jurisdiction, it should affirm the District Court's decision because Appellant is subject to a valid and enforceable removal order that does not need to be reinstated. Hold on, Ms. Ramos. This is a question for you. This is Judge Newsom. So can I sort of flip the script, my rule of lenity script on you a bit? Because it seems strange to me, frankly, that the United States government, which has the authority to remove previously sort of inadmissible aliens under 1326, is advocating a construction of 1101G, which would narrow the range of people subject to prosecution under 1326. Why is that? Your Honor, the government would submit that the interpretation of 1101G does need to be within the context of either reinstatement under 1231.85 or criminal reentry under 1326. Appellant points primarily to out-of-circuit cases addressing 1101G in the context of criminal reentry. That's not the context that we have here. But you agree, right, that you agree that 1101G, whether it operates in the context we have here or in 1326, has got to mean the same thing? Yes, Your Honor. And the government would submit that it does. It submits that in order for an alien to be removed, they must depart the United States under a pending order of removal. So the Fifth Circuit got it wrong? Your Honor, the government would submit that the Fifth Circuit's decision in the United States v. Romero-Kharkama should not be applied in the reinstatement context or in the circuit. And I know you certainly were not the attorney in that case, but the government pressed an interpretation in that case on which it won. And now the government is pressing a different argument on the same statutory interplay here. And I don't want to speak for him, but I think Judge Newsom's point on the boomerang is that if you prevail here on your substantive statutory theory, you may get a benefit on the civil side for removal and deportation and reinstatement of prior orders. But you're going to have a much more difficult, if not impossible, time on the criminal side in prosecuting individuals like Ms. Romero for illegal reentry. And I think both he and I want to make sure you understand that that's the scenario you may find yourself in if you win here today. I understand, Your Honor. And I can't speak for what the government's argument or the basis for in that case, but we would submit that that case has not been so widely applied that it should persuade this court here. And it doesn't change our argument in front of this court. That decision has been cited in two published decisions in the 12 years since it issued, one of them being the other out-of-circuit case that appellant points to, which is United States v. Sanchez. Not only is the context different in both of those cases than it is here, but the facts in the decision are much different than what is here. For instance, in Sanchez, the Seventh Circuit case that appellant points to, there was no dispute that the petitioner had a previously executed removal order. The only issue there was whether his removal to Mexico v. El Salvador counted as removal for purposes of Section 1326. The government fails to see how appellant pointing to that case helps her case here. Her case is very different. She admits a removal order exists. She applied for a stay of that removal order several times between 2016 and 2019. It was only when her final renewal request for that stay was denied in 2019 that she has now brought this litigation making this challenge to the removal order. Not only does she not challenge the removal order exists, she only challenges its execution, which goes back to the government's argument regarding 1252G. Section 1252G precludes judicial review of the Attorney General's decision to execute removal orders. Here, it is simply a matter of how and when the removal order needs to be executed that appellant challenges. She believes that her removal order needs to be reinstated pursuant to Section 1231A5 before she can be reinstated. Make clear that a removal order is only previously executed and thus eligible for reinstatement if that non-citizen departed the country under an order of removal. That's not the case here. So just so I understand, when you say the plain language of 1101G, why is that so? I mean, you know, Mr. Dominguez says, look, if it doesn't say then, it doesn't set up a interpretation. The language is in past tense, ordered, removed. Thus, at the time appellant departed, January 1995, she had not been ordered removed. Well, let me try this. I sort of forced Mr. Dominguez into following along with a sort of a parallel hypothetical. Let me ask you this one. I think the sentence syntax is the same. Anyone convicted of terrorist acts who has worked for Chinese government shall be sent to a maximum security prison. Is it necessary that the convict must have been convicted of terrorism acts, terrorist act first, and then work for the Chinese government? Or are those two things just, if you do both of them, then you're going to a maximum security prison? I can see the argument both ways, Your Honor, in that that sentence lacks the required syntax. I think that perhaps that is applicable to appellant's alternative argument in terms of did the removal order execute upon its issuance in April 1995 because she had departed. But the primary argument that appellant put forth is that she self-executed it when she left in January 1995. So at the time that she left in January 1995, she executed a removal order that didn't come into existence until April 1995. So to that argument, I think the hypothetical does not quite track what the point that appellant wants to make. To the argument that the removal order... But I think at least one of the potential problems with your clear statement position on 1101G is that it does not refer to a removal order. It refers to removal or deportation, not the order that comes with it. And that's where I think the potential ambiguity lies. Maybe. Now let me ask you, you started out by saying that you didn't think that the district court had jurisdiction, and I guess that goes back to your in custody position, right? That's correct, Your Honor. Okay, as I know number counting doesn't always work, and we haven't really addressed the issue in a published opinion, but the second, third, sixth, ninth, and tenth or an order of supervision plus an order of removal put you in custody for purpose of the habeas statute. Do you have any cases from any other circuits that go the other way? Your Honor, we would distinguish that to the point that this is not the type of OSIP that was considered in those cases, if my recollection is correct. In this case, appellant applied for a stay of removal in 2016. An OSIP is a necessary, necessarily follows if her application is granted. It states so right on the form that she would be subject to certain conditions by applying versus in those cases, if an individual is released from detention under an OSIP and conditions that might follow with an OSIP. That's not the case here. Appellant applied for a stay of her removal knowing that those conditions would come with it and follow those conditions for three years without being coupled with any foreseeable detention so long as that stay was in place, and it did remain in place for three years. Does an order of removal in and of itself create in custody status for purpose of the habeas statute 2241? It doesn't. It doesn't, Your Honor. What's your best case for that proposition? We've held that an immigration detainer is not enough to create in custody status, but I'm looking for any case anywhere that has held that an order of removal, which brings with it certain restrictions on what the immigrant can do until he or she is removed, does not constitute in custody status. Are there any cases that support you there? The government would point primarily to this court's unpublished decision in Arnold v. U.S. Attorney General 422F Appendix 793, in which this court held that the mere possibility of future deportation is insufficient to establish custody even when the petitioner is subject to a deportation or removal order. That would be the government's position regarding removal, and as this court has recognized, albeit not in a published opinion, that would be not enough to establish the in-custody requirement of Section 2241. What about, though, where you've got something extra? Here you've got a deportation order plus, I would say, what kind of to me look like pre-deportation parole conditions. We've got an old Fifth Circuit case that I think binds us called Marcello that looks pretty close, that says when you've got a deportation order in conjunction with these parole-ish conditions, that's good enough. The government would submit that it's not. I don't have any other cases offhand to point you in the direction that it seems you're looking for, but it is not enough coupled with the OSEP, particularly with the facts of this case where the OSEP are a condition of something that petitioner applied for. She applied to stay a removal order, knowing right on that application it stated that that would come with conditions under which she would need to comply with while that stay was in effect. So your point is basically that if she opts into custody, it's no longer custody? The government would state that it was never custody to begin with, Your Honor. The OSEPs are not custody. She's not in custody. I guess I'm just trying to figure out the import of your, you keep saying something like she was on fair notice. She knew that these conditions came with it. What work is that doing? Only to state that her alternative is she could have been removed in 2016. I don't think it changes the government's position whether she's under an OSEP or not in terms of custody. The government's position that an OSEP by itself or coupled with something else or a removal order by itself or coupled with something else is enough to establish in custody for purposes of 2241. And here the district court relied on this court's decision in Madu versus Attorney General. In that case, the court found habeas jurisdiction because the petitioner challenging the existence of a removal order as it relates to the government's ability to detain the petitioner. So to the extent that this district court found that habeas jurisdiction applied based on Madu versus Attorney General, the government would submit that that finding is incorrect. Unlike the petitioner in Madu, the appellate has never been detained or in custody by the government. She's not subject to a detainer. She's not subject during the extent of her stay to threat of any immediate deportation. But to the extent that this court finds that the district court had it correct in terms of habeas jurisdiction or jurisdiction to review appellant's challenges to her removal orders, nonetheless, the government would submit that this court should affirm the district court's decision based on the fact that appellant has a valid enforceable removal order that does not need to be reinstated under Section 1231A5 in order for the government to remove her. The plain language, or if not the plain language, the plain language does state that the government's position is the plain language is clear that the individual needed to have departed under an order of removal. And even if this court finds that that statutory language is not plain, it should accord Chevron deference to the agency's interpretation of the specifically 241.7 and 241.8 that the agency has put in place implementing 1101G as it relates to the reinstatement of removal orders. And those interpretations likewise state that the individual must have departed the United States under an order of removal before illegally reentering the country in order for that removal order to be deemed executed such that it needs to be reinstated under 1231A5 as appellant requests. For those reasons, we ask that this court, should it find that the district court had jurisdiction, affirm the decision. Thank you. All right, thank you very much, Ms. Ramos. Mr. Dominguez. Yes, thank you, your honors. I would likely briefly begin to clarify that it is not our position that the order was executed at the time of her departure prior to the existence of an upon entry in April of 1995, because at the entry, those two predicates under 1101G, therefore, have been met. So it would have been executed upon its entry, not at the prior departure by petitioner. So can I ask you a follow up question, if that's your position, another hypothetical. So imagine that an illegal alien steps across the border from Mexico to Texas, is there for 10 seconds. So steps across from Mexico to Texas, goes from Texas to Mexico, stands there for 10 seconds, and then comes back permanently into the United States. At that point, does that person qualify under the statute? Because that person has left, notwithstanding the fact that maybe the removal doesn't commence for another 20 years. I guess it would depend at what time the removal order was issued, your honor, if the removal order wasn't issued for another 20 years. No, your honor, because at that time, they had reentered the United States. And if they if the removal order did not exist at the time, they were outside the United States, those two predicates under the length of the under the statute would not be met. So therefore, that person would not have an executed order. And I would I would like to briefly, as my time expires, reaffirm this court's jurisdiction. In this case, the court, the district court's exercise of habeas was proper. There was custody under the terms of order of supervision and the imminent deportation. In this case, I would point to this court's decision Marcello versus district director, extending the reasoning of Jones versus asked for alleviation of her order of supervision. Therefore, the request was proper under Thurisidium. She did ask for to be alleviated from this order of custody from the order of supervision. It was not a request for simply more process, whereas in Thurisidium, the alien simply asked for more process. And even if that was granted, the petitioner in that case would have if the continued to have been detained. If the alien or if the district court granted the habeas here, it would have alleviated. You can thank you. Thank you, Your Honor. It's just that if the habeas was granted in this case, she would have been alleviated from the terms of her supervision, thus ending her custody. So there's that difference between Thurisidium and the habeas relief requested in this case. All right. Thank you both very much. We really appreciate the help.  All right. We'll move on to our second case, which